# UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| KELLY CARR, | ) |
| | ) |
|      PLAINTIFF, | ) |
| | ) |
| vs. | )   CASE NO. 09-CV-284-FHM |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of the | ) |
| Social Security Administration, | ) |
| | ) |
|      DEFENDANT. | ) |

## OPINION AND ORDER

Plaintiff, Kelly Carr, seeks judicial review of a decision of the Commissioner of the Social Security Administration denying Social Security disability benefits.[1] In accordance with 28 U.S.C. § 636(c)(1) & (3) the parties have consented to proceed before a United States Magistrate Judge.

The role of the Court in reviewing the decision of the Commissioner under 42 U.S.C. §405(g) is limited to determining whether the decision is supported by substantial evidence and whether the decision contains a sufficient basis to determine that the Commissioner has applied the correct legal standards. *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Doyal v. Barnhart*, 331 F.3d 758 (10th Cir.

---

[1] Plaintiff's application for Disability Insurance benefits was denied initially and upon reconsideration. A hearing before an Administrative Law Judge (ALJ) was held October 24, 2008. By decision dated January 22, 2009, the ALJ entered the findings which are the subject of this appeal. The Appeals Council denied review of the findings of the ALJ on March 19, 2009. The action of the Appeals Council represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

2003). The Court may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *See Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005). Even if the Court might have reached a different conclusion, if supported by substantial evidence, the Commissioner's decision stands. *White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2002).

Plaintiff was 46 years old at the time of the hearing. [R. 22]. She claims to have been unable to work since August 31, 2004, due to failed spinal fusion syndrome, chronic pain syndrome/chronic cervical myofascial pain syndrome. [R. 21, 104]. Plaintiff was last insured for disability insurance benefits on June 30, 2005. [R. 20]. To qualify for disability insurance benefits, Plaintiff must establish that she was disabled prior to that date. *Potter v. Sec. of Health & Human Svs.*, 905 F. 2d 1346, 1348 (10th Cir. 1990) (In determining whether claimant is entitled to disability benefits, the relevant analysis is whether the claimant was actually disabled prior to the expiration of his/her insured status.). The ALJ found that as of June 30, 2005, Plaintiff had a severe impairment consisting of status post fusion at C4-5, C5-6 and C6-7. [R. 12]. He determined that Plaintiff retained the residual functional capacity (RFC) to perform sedentary work that avoided working above shoulder level. [R.13]. Based upon the testimony of a vocational expert (VE), the ALJ found Plaintiff's RFC precluded performance of her past relevant work (PRW) as a court reporter but that there were other jobs in the national economy that Plaintiff could have performed prior to the expiration of her insured status. [R. 15-16]. He concluded, therefore, that Plaintiff was not qualified for disability insurance benefits pursuant to the Social Security Act. [R. 16-17]. The case was thus decided at step five of the five-step evaluative sequence for

determining whether a claimant is disabled. *See Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005) (describing the five steps); *Williams v. Bowen*, 844 F.2d 748, 750-52 (10th Cir. 1988) (discussing five steps in detail).

Plaintiff asserts the ALJ failed to properly consider the treating physician's opinion and Plaintiff's credibility and that his RFC assessment is not supported by substantial evidence. For the following reasons, the Court finds this case must be reversed and remanded to the Commissioner for reconsideration.

### Medical History

The following medical records were generated prior to June 30, 2005, the date Plaintiff's insured status expired:

The earliest treatment report is that of Gerald R. Hale, D.O., of Tulsa Pain Consultants, dated July 27, 1999. [R. 233-234]. Plaintiff had been in a motor vehicle accident and demonstrated radiographic and discogram evidence of discogenic disease of the cervical spine. She had surgery consisting of a three-level cervical fusion with anterior orion plate. Dr. Hale noted that, although she had physical therapy, Plaintiff continued to have nagging complaints, primarily around the neck region with recent extension in the upper aspect of the right arm and that she had developed somewhat of a tremor involving just the right hand. His examination of Plaintiff revealed extremely limited mobility of the cervical spine, primarily due to physiologic limits of pain, most pronounced with attempts at extension but also present with rotation. Plaintiff was able to forward flex but slowly and with some discomfort. Tenderness upon palpation was noted on facets at approximately the C4-5 level with significant myofascial changes in the right parascapular region involving almost all muscle groups. Plaintiff's grip strength

3

was slightly diminished. The tremor appeared to be most pronounced with intentional movements and resolved somewhat at rest. *Id.*

On August 21, 2003, Dr. Hale noted Plaintiff had received botox injections in May with some benefit. [R. 231-232]. He recorded Plaintiff's complaints of progressive increasing pain at the base of her neck, progressive radicular symptoms involving her right upper extremity and "drawing of her fingers" particularly on the right hand. He said: "This is from chronic cervical radiculopathy."[2] Plaintiff reported the pain at the base of her neck at times was intolerable and that it limited her ability to function. *Id.* Physical examination revealed tenderness and myofascial trigger points along the trapezius, levator scapula and rhomboids.[3] There was no spondylosis or myelopathy and Plaintiff's grip strengths were well-maintained. [R. 231]. Dr. Hale's diagnoses were: Chronic neck pain; Cervical radiculapathy; Status post anterior cervical discectomy with fusion; Anxiety/depression; and Neck pain. He prescribed trigger point injections. *Id.*

Dr. Hale examined Plaintiff again on January 15, 2004, and administered trigger point injections for chronic longstanding cervicogenic related spasms, pain and headaches. [R. 230].

---

[2] Radiculopathy is also known as a "pinched nerve." *See, e.g.,* Cervical Radiculopathy (Pinched Nerve in Neck), *at* http://www.emedx.com/emedx/diagnosis_information/shoulder_disorders/cervical_ radiculopathy_outline.htm; *accord* Radiculopathy, *at* http:// www.back.com/symptoms-radiculopathy.html ("Doctors use the term radiculopathy to specifically describe pain, and other symptoms like numbness, tingling, and weakness in your arms or legs that are caused by a problem with your nerve roots."). *See Grogan v. Barnhart*, 399 F.3d 1257, 1262, n. 2 (10th Cir. 2005).

[3] Pain attributed to muscle and its surrounding fascia has been termed myofascial pain. The diagnosis of this syndrome is clinical, with no confirmatory laboratory tests available. Thus, myofascial pain in any location is characterized on examination by the presence of trigger points located in skeletal muscle. In the cervical spine, the muscles most often implicated in myofascial pain are the trapezius, levator scapulae, rhomboids, supraspinatus, and infraspinatus. A trigger point is defined as a hyperirritable area located in a palpable taut band of muscle fibers. *See* medical encyclopedia online at: http://emedicine.medscape.com/article/305937-0verview (Updated: Apr. 12, 2009).

At Dr. Hale's request, the neurosurgeon who had performed Plaintiff's cervical diskectomy and fusion on April 15, 1998, James A. Rodgers, M.D., and his physician's assistant, Joe Hlavin, PA-C, saw Plaintiff on August 19, 2004. [R. 148-151]. Plaintiff reported postop symptoms had developed over the two years since surgery with pain medication "helping less and less." [R. 148]. Those symptoms were described as right arm weakness, some tremors in hands at times, numbness in right hand and fingers when turning head to the right, muscle spasms in neck and right shoulder, sharp pain in lower part of neck, moving or popping of neck, burning, aching and radiating left shoulder discomfort. *Id.* Physical examination revealed limited range of motion (ROM) of the cervical spine, especially to the right, no crepitus, tenderness especially along the posterior inferior aspect of the cervical spine and discomfort in the shoulders with movement. [R. 149-150].

While awaiting Dr. Rodger's report, Dr. Hale saw Plaintiff on September 9, 2004, for medication maintenance and noted she "has been maintained and functional on OxyContin 20 mg t.i.d., Xanax 0.t mg b.i.d. and Soma 350 mg q.i.d." [R. 229]. Plaintiff had headaches, neck pain and pain down both arms. Dr. Hale observed that Plaintiff did not appear to be excessively sedated or over medicated and that she demonstrated a normal gait and movement of the shoulders, elbows, wrists and digits. *Id.* He decided to continue "with palliative medical maintenance." *Id.*

X-rays, nerve conduction studies and an EMG ordered by Dr. Rodgers indicated complete fusion from C4-C6 with mild uncovertebral bone spur at C3-4 and mild right median neuropathy of the right wrist. [R. 144-147]. Dr. Rodgers reported to Dr. Hale on September 30, 2004, that the EMG and nerve conduction velocity study were totally

5

within normal limits and that the myelogram and post-myelogram CT scan showed no root filling defect, no anterior defect that was significant and only mild cervical spondylosis changes at C3-4 above a solid C4-C7 fusion. [R. 142-143]. He expressed concern regarding Plaintiff's use of Lortab, OxyContin, Restoril and Xanax in addition to blood pressure medication and occasional Excedrin Migraine tablets. *Id.* He recommended slowly tapering Plaintiff's medication in favor of other options, including referral for acupuncture, biofeedback and a visit with a psychologist specializing in pain control.

Plaintiff underwent trigger point injections on October 15, 2004, at Dr. Hale's office. [R. 227-228]. A muscle stimulator device was ordered for her in January 2005. [R. 226].

Upon retirement of her primary care physician, Plaintiff began seeing Jonelle Gaddis, D.O., on March 1, 2005, for gynecological care and treatment of hypertension and depression. [R. 202-203]. During the relevant time period, she saw Dr. Gaddis regularly for a variety of ailments, including follow-up care after a hysterectomy in May 2005. [R. 166-184, 200-201, 223-224].

On March 23, 2005, Dr. Hale noted Dr. Rodgers' opinion that no specific structural improvements could be accomplished by surgical intervention, "feeling there would just be things that would not get better." [R. 225]. Dr. Hale said:

> Unfortunately, Kelly continues to have pain along the upper thoracic and posterior spinal musculature that affect her, specifically the trapezius and levator scapuler continually involved in spasm.

*Id.* He again injected trigger points and continued her routine medications with a follow-up visit scheduled in six months. *Id.*

After Plaintiff's insured status expired on June 30, 2005, both Dr. Hale and Dr. Gaddis provided treatment on a regular basis. [R. 152-156, 158-165, 190-199, 204-206, 217-222, 235-239, 242-248, 250-252, 250-325, 335-338]. Dr. Gaddis authorized a handi-capped parking placard on November 22, 2006, stating Plaintiff cannot walk 200 feet without stopping to rest. [R. 318]. Dr. Hale signed Plaintiff's loan discharge application on September 26, 2008, stating Plaintiff's medical condition prevents her from being able to work and earn money in any capacity. [R. 316].

Dr. Hale also completed and signed two forms titled "Medical Source Opinion of Ability To Do Work-Related Activities" on September 26, 2008. [R. 312-315]. One form reflected Plaintiff's condition as of June 30, 2005. [R. 312-313]. The other was for Plaintiff's condition as of September 26, 2008. [R. 314-315]. The same limitations were assessed on both check-list forms: infrequent stand/walk; frequent lift/carry 10 lbs.; infrequent use of arms for reaching, pushing and pulling; and infrequent use of hands for grasping, handling, fingering or feeling.[4] However, the handwritten medical findings that support the assessment on the forms were different. On the form regarding Plaintiff's condition as of June 30, 2005, Dr. Hale wrote: "Chronic pain/disability from neck surgery with progressive deterioration of spine, cervical/lumbar." [R. 313]. On the form for the current condition, Dr. Hale wrote: "Chronic pain/disability from neck surgery with subsequent degeneration of spine, cervical & now lumbar disc disease." [R. 315].

---

[4] The forms contained the following descriptions: "Infrequent = Less than 2 hrs.; Frequent = 4-5 hrs.; Occasional = 2-3 hrs.; Continuous = At least 6 hrs." [R. 313, 315].

7

Dr. Hale's examination and treatment notations from September 26, 2008, contain the following paragraph:

> Ms. Kelly Carr presents today for routine follow-up. Kelly is a patient that I have followed essentially since 1997, prior to her initial neck surgery. She has received additional evaluations by surgeon Dr. Rodgers for her persistent right greater than left cervical radiculopathy. She has been unable to be pain free since the surgery occurred in 1998. She did undergo some retraining and attempts to go back to work, but all have failed because of her inability to control the pain adequately and her intolerance to doing repetitive activities, particularly the neck and upper extremities. Earlier this year she developed some lower back related issues. An MRI does reveal disk bulge at L5-S1. She receives epidural injections for that intermittently, the last injection was in February, and she has done reasonably well with just palliative medication maintenance.

[R. 338].

Dr. Gaddis also completed two Medical Source Opinion of Ability To Do Work-Related Activities assessments. [R. 339-345]. These forms were designed to address Plaintiff's mental limitations and were dated October 23, 2008. *Id.* One of the forms completed by Dr. Gaddis represented Plaintiff's condition "As of June 30, 2005." [R. 343]. On both assessments, most of Plaintiff's limitations in abilities to perform work activities were described as "marked." [R. 343-345].

## The ALJ's Decision

The ALJ determined that Plaintiff's alleged depression and anxiety was mild and treatable and would have only a minimal affect on her ability to perform substantial gainful activity (SGA). [R. 13]. The basis for this finding was that Plaintiff had never sought treatment from a mental health professional and that she received medication

from a general practitioner. *Id.* He also cited the findings of the agency's medical experts as support for his determination that Plaintiff's depression was not severe.

Because Plaintiff's complaints of tremors in her hands were mentioned only twice in Dr. Hale's treatment records prior to June 30, 2005, the ALJ found the condition was mild and would have only a minimal affect on Plaintiff's ability to perform SGA. [R. 13].

After finding that Plaintiff's impairment did not meet or equal a listing, the ALJ determined that Plaintiff had the RFC to: occasionally lift and/or carry 10 pounds; frequently lift and/or carry up to 10 pounds; stand and/or walk for at least 2 hours in an 8-hour workday; sit for at least 6 hours in an 8-hour workday; and avoid working above shoulder level. [R. 13]. As support for his RFC assessment, the ALJ first set out the regulations, rulings and case law governing his consideration of the evidence in the record and then said:

> There is very little medical evidence on or prior to June 30, 2005, the date the claimant was last insured for disability benefits. Exhibits 5F, 8F, 11F through 14F, and 18F through 22F are for the period after June 2005, the date the claimant was last insured for disability benefits, and have not been considered.
>
> EMG and nerve conduction studies performed on September 1, 2004, were unremarkable (Exhibit 1F, pages 1 and 5). CT scan of the cervical spine on September 8, 2004, showed only the prior fusion surgery (Exhibit 1F, pages 3-4). Physical examination on September 9, 2004, was normal (Exhibit 4F, page 13).
>
> On September 25, and 26, 2008, Dr. Hale completed a medical source statement indicating that the claimant could not perform even sedentary work. (Exhibits 15 F, 16F, and 17F). The [ALJ] gives no weight to these statements because they were completed three (3) years after the claimant was last insured.

[R. 15].

The ALJ then addressed Plaintiff's credibility, saying her treating physicians did not place any functional restrictions on her activities that would preclude sedentary work activity with the previously mentioned restrictions on or prior to June 30, 2005. *Id.* He stated Plaintiff's daily activities were consistent with the performance of sedentary work on and prior to June 30, 2005 and that "[g]iven the objective medical evidence in the record" he found his own assessment of Plaintiff's RFC was "reasonable." He mentioned the opinions of two state agency medical experts that Plaintiff could perform greater than sedentary work activity. [R. 15].

Based upon these findings, the ALJ determined Plaintiff could not perform her past work but that there were other jobs in the economy that Plaintiff could perform prior to the expiration of her insured status. [R. 15-18].

## **Discussion**

A physician who has treated a claimant prior to the date his or her insured status expired may offer an opinion that is retrospective of Plaintiff's limitations during the relevant time period. *See Potter*, 905 F.2d at 1348-9 ("It is true that a treating physician may provide a retrospective diagnosis of a claimant's condition.") (citing *Millner v. Schweiker*, 725 F.2d 243, 246 (4th Cir. 1984) (treating physician's diagnosis of claimant's condition may be made after relevant determination date and is entitled to significant weight if based on objective medical criteria)); *see also Miller v. Barnhart*, 175 Fed.Appx.952, 957, 2006 WL 895503 (10th Cir. 2006) (unpublished) (a retrospective medical assessment of a patient may be probative when based upon clinically

acceptable diagnostic techniques) (citing *Perex v. Chater*, 77 F.3d 41, 48 (2nd Cir. 1996) (concerning a treating physician's retrospective assessment)).

Plaintiff asserts the ALJ failed to properly consider Dr. Hale's retrospective opinion regarding her limitations prior to the date her insured status expired. [Dkt. 17, pp. 4-6; Dkt. 19, pp. 1-3]. The Commissioner responds that Dr. Hale's opinion was not entitled to controlling weight because it was completed over three years after the date Plaintiff was last insured and because it was inconsistent with other medical evidence of record from the relevant period. [Dkt. 18, pp. 4-7].

Dr. Hale has been Plaintiff's treating physician since at least 1999. [R. 233-234]. Dr. Hale submitted a "Medical Source Opinion of Residual Functional Capacity Condition As Of 6/30/05." [R. 313]. The ALJ gave one reason for attributing "no weight" to Dr. Hale's opinion, that the opinion was completed three years after Plaintiff was last insured. [R. 15]. Under the circumstances of this case, the Court finds the ALJ was compelled to address the treating physician's opinion regarding Plaintiff's functional limitations during the relevant time period and the reason he gave for not doing so is not legitimate. *See Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir.2004) (discussing procedure for evaluating treating physician's opinion)*; Watkins v. Barnhart*, 350 F.3d 1297, 2003 WL 22855009, at *2 (10th Cir. Dec. 2, 2003) (When an ALJ decides to disregard a medical report by a claimant's physician, he must set forth specific, legitimate reasons for his decision.).

Regarding the Commissioner's argument, the ALJ did not say he did not give controlling weight to Dr. Hale's opinion because it was inconsistent with Dr. Rodgers' findings or the EMG and nerve conduction studies, or that Dr. Hale's opinion was

11

inconsistent with his own treatment notes. Instead, the ALJ lumped the two clearly distinct opinions together and stated merely that he gave no weight to the opinions "because they were completed three (3) years after the claimant was last insured." [R. 16].[5] The Court is not free to supply reasons not relied upon by the ALJ for the evaluation of evidence. *See Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004) ("That the record contains evidence that may support a specific factual finding cannot substitute for the finding itself."); *Drapeau v. Massanari*, 255 F.3d 1211, 1214 (10th Cir.2001) ( "[W]e are not in a position to draw factual conclusions on behalf of the ALJ."). The Commissioner relies upon the portion of the ALJ's decision where he summarized some of the medical evidence as indication that the ALJ found that evidence to be inconsistent with Dr. Hale's opinion. However, the ALJ did not summarize all the medical evidence from the relevant time period. Nor did he explain how he weighed any of the medical evidence that he did consider. It is not sufficient for the ALJ to generally summarize a portion of the record, state a conclusion and leave it to the reviewing court to sift through the summarized evidence to try to determine what might have been the basis for the ALJ's conclusion.

## **Conclusion**

Dr. Hale's diagnosis of chronic cervical radiculopathy and chronic pain syndrome occurred well before the date her insured status expired. The ALJ did not offer a legally tenable reason for not considering the opinion of Dr. Hale who rendered treatment

---

[5] The Court notes that the ALJ favorably viewed the opinions of the agency's medical experts despite the fact that they too were generated well after the date Plaintiff was last insured. [R. 13, 15, 265-286].

during the relevant time period and whose opinion was clearly intended to cover the treatment given prior to the date Plaintiff was last insured. Therefore, the Court cannot say that the record contains substantial evidence to support the determination of the ALJ that Plaintiff was not disabled on or before June 30, 2005.

Accordingly, the decision of the Commissioner finding Plaintiff not disabled is REVERSED and REMANDED to the Commissioner for reconsideration.

Dated this 29th day of March, 2010.

*Frank H. McCarthy*

FRANK H. McCARTHY
UNITED STATES MAGISTRATE JUDGE